HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS *IN PRO PER*

FILED
JUN 1 8 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

HANA HILSENRATH AND OLIVER HILSENRATH,

    Plaintiffs,

v.

NIXON PEABODY LLP, GLENN WESTREICH, BETH MITCHELL, AND DOES 1-10,

    Defendants.

Case No. C 07 3193 TEH

PLAINTIFFS' PETITION FOR LEAVE TO FILE "COMPLAINT FOR MALICIOUS PROSECUTION, CIVIL CONSPIRACY AND EXTORTION" PURSUANT TO CIVIL CODE §1714.10

## INTRODUCTION

Plaintiffs Hana and Oliver Hilsenrath submit to the Court this petition for leave to file a complaint against the lawfirm of Nixon Peabody LLP (NIXON) and two of its partners, Glenn Westreich (WESTREICH) and Beth Mitchell (MITCHELL), pursuant to Civil Code §1714.10.

While plaintiffs will present the argument that the current complaint is likely not subject to the requirement to file a petition for leave pursuant to §1714.10, this petition is nevertheless submitted in an abundance of caution.

According to the requirements of §1714.10(a), this petition is accompanied by the *"proposed pleading"* – the attached complaint, and a supporting Declaration of Oliver Hilsenrath summarizing the evidence.

## THIS PETITION

Nixon Peabody, Westreich and Mitchell conspired with their clients Janvrin et al, devised a scheme to extort and implemented it under the veil of a malicious prosecution of the Hilsenraths bringing *inter alia* to the collapse of US Wireless.

Nixon Peabody resigned in March 2007 from their representation of Janvrin et at (4:02-cv-1068 CW,BZ – Janvrin et al v. Hilsenrath et al.) after a 7 years representation[1].

The Court has already looked into the sufficiency of the pleading against NIXON's clients Janvrin et al. Judge Bernard Zimmerman concluded in that case recently:

> "First, I conclude that the facts alleged in the amended counterclaim, liberally construed, sufficiently pleads a cause of action for invasion of privacy under the California Constitution. Counterclaimants allege that managers and directors of the counterdefendants knowingly, and without consent, obtained counterclaimants' private financial information held in a fiduciary capacity by Equity Trust. See Amended Counterclaim at ¶¶ 1, 4, 21.
>
> Counterdefendants thereafter used the information to "blackmail" and otherwise pressure Dr. Hilsenrath and U.S. Wireless Corporation (USWC) to settle a lawsuit, and to pressure the Board into launching a "secret investigation" leading to the termination of Dr. Hilsenrath as CEO of USWC. Id. at ¶¶ 5, 6. These admitted allegations establish

---

[1] Including representation of a related case from 2000 to 2001: 4:00-cv-02334 CW, 4:00-cv-02336 CW and 4:00-cv-02346 CW.

HILSENRATH V. NIXON PEABODY LLP         -2-

> that counterdefendants invaded counterclaimants' legally protected and reasonable expectation that their private financial information would not be accessed by others, and that the invasion was serious.
>
> In addition, the fifth cause of action sufficiently pleads a claim for intentional infliction of emotional distress. Counterclaimant Hana Hilsenrath alleges she suffered "fear, anguish, and illness" as a result of counterdefendants' violation of her and her family's privacy. See Amended Counterclaim at ¶ 27. I cannot say that as a matter of law, the counterdefendants' actions were not extreme and outrageous, and her declarations establish the seriousness of the injuries and the viability of the claim."

This scheme was implemented over 7 years through a torturous and malicious litigation conducted by NIXON, WESTREICH AND MITCHELL.

None of the officers and directors of Janvrin et al ever entered the United States or otherwise communicated with plaintiffs other than through Nixon et al.

The implementation of the above established conspiracy and malicious prosecution were by the hands of Nixon Peabody, Westreich and Mitchell.

The object of this current complaint is to bring NIXON et al to justice and seek damages for their active role in implementing this conspiracy.

NIXON, WESTREICH AND MITCHELL clearly acted outside the prescribed boundaries of §1714.10, §47(b)[2] and other statutes

---

[2] *Flores v. Emerich & Fike, 416 F. Supp. 2d 885* --The litigation privilege found in Cal. Civ. Code § 47(b) does not apply to claims of malicious prosecution. Malicious prosecution actions are permitted because the policy of encouraging free access to the courts is outweighed by the policy of affording redress

HILSENRATH V. NIXON PEABODY LLP                    -3-

that protect attorney-client relationship as will be argued in this petition.

## ALLEGATIONS

The allegations are described in detail in the attached complaint.

Nixon et al. planned a scheme to extort by means of a malicious prosecution against the Hilsenraths and US Wireless.

This effort culminated in a weeklong meeting of Nixon et al with their clients and others (a total of 9 persons) some of whom will be available to testify at trial.

At the London meeting, as well as before and after that meeting, Nixon et al unlawfully accessed confidential records of the Hilsenraths and transported them back to the US for use as an extortion tool. Nixon and its co-conspirators intended to use these records to get Hilsenrath fired.

The plan of getting Mr. Hilsenrath fired from his post of CEO succeeded and Mr. Hilsenrath was removed as an obstacle for Nixon and Janvrin.

Within days Mr. Hilsenrath's company US Wireless collapsed as the result of the same scheme.

---

for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied.
Even if a reasonable attorney might believe in the merits of a claim, one cannot escape liability for malicious prosecution if the action was prosecuted with knowledge of the falsity of the claim.
//The California Supreme Court has stated that the only exception to the application of § 47(b) to tort suits is for malicious prosecution.

Unable to enjoy the fruits of their extortion, mostly paid in USWC stock, Nixon turned to a new phase of the same malicious prosecution to obtain now financial advantages directly from the Hilsenraths.

This second scheme failed too and rendered Nixon at al alone in the ring, after their former clients, Janvrin et al, simply refused to appear in court as requested by the presiding Judge Claudia Wilken.

Finally a default judgment was entered against the vanished plaintiffs themselves in that action (Janvrin et al).

Nixon at al were released from their representation upon their own request.

At his last appearance in court in March 2007(case No. 4:02-cv-1068), Westreich from Nixon Peabody represented on record that his clients Janvrin et al (three firms operated by a Jersey/UK trust) were shut down long ago.

Therefore Nixon Peabody were litigating <u>on</u> their own account and <u>for</u> their own account for an indefinite amount of time.

## EVIDENCE IN SUPPORT OF PETITION FOR LEAVE TO FILE COMPLAINT

Plaintiffs present the following evidence through testimony, sworn affidavits or sworn depositions taken under Federal Rules of Criminal Procedure – Rule 15[3].

---

[3] Rule 15 deposition mostly take overseas as part of United States v. Hilsenrath, CR-03-213 WHA, upon unavailability of witnesses to travel to California. Testimonies were taken primarily in Jersey/UK during summer 2005. All depositions were taken under oath, in the presence of a US court reporter and in the presence of a local judiciary officer (Viscount). All depositions are admissible in US Federal court pursuant to

The evidence is mostly comprised by testimony or pleadings in either Case CR-03-213 WHA or Case 4:02-cv-1068 CW,BZ.

All evidence items are presented in Oliver Hilsenrath's Declaration in support of this petition.

Janvrin and their attorneys, Nixon et al, formed a conspiracy[4], thus both parties are responsible for the injuries. The evidence presented while overwhelmingly compelling is at times circumstantial. Plaintiffs do not have the duty to allege with ultimate precision details that will still be uncovered in discovery. More so in a case in which it was established that the conspirators acted significantly to destroy evidence[5].

---

Crim. Proc. Rule 15 and pursuant to a Mutual Legal Assistance Treaty ratified by the US Department of Justice and the local justice department.

[4] *Mopex, Inc. v. Chi. Stock Exch., 2003 U.S. Dist. LEXIS 2807* Under Illinois law, a civil conspiracy, must include (1) an agreement by two or more parties to do an unlawful purpose; and (2) at least one tortious act by one of the parties in furtherance of that agreement. While the agreement is an important element of civil conspiracy claim, it does not assume the same importance as in a criminal action. An act satisfying the second element cannot be simply any act that furthers the conspiracy and causes injury to another. A plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character. This independently tortious act in furtherance of the agreement forms the basis of liability for all civil conspirators

A civil conspiracy extends the circle of liability surrounding a tortious act, by holding liable all who implicitly encouraged that act as part of a larger illegal agreement or plan.

For civil conspiracy, a subset of defendants must have committed a clear tort, for which the whole group can be held liable because of the group's larger illegal plan. For civil conspiracy, a subset of defendants must have committed a clear tort, for which the whole group can be held liable because of the group's larger illegal plan.

[5] *Adcock v. Brakegate, Ltd., 164 Ill. 2d 54* Conspiracies are often purposefully shrouded in mystery. Such actions, by their very nature, do not permit a plaintiff to allege, with complete particularity, all of the details of the conspiracy or the exact role of the defendants in the conspiracy. In fact, a conspiracy is rarely susceptible of direct proof; instead, it is established from circumstantial evidence and inferences drawn from evidence, coupled with commonsense knowledge of the behavior of persons in similar circumstances. A plaintiff cannot be required to plead with specificity the very facts that can only be proven by circumstantial evidence. More importantly, a plaintiff is not required to allege facts with precision where the necessary information to do so is within the knowledge and control of the defendant and unknown to the plaintiff.

**A. Declarations of Broderick and Dahan and NIXON travel itinerary**

1. 2006 Declaration of Sean Broderick/Barry Portman - Federal Public Defender re: meeting of Westreich from Nixon Peabody with the trust executives in London to retrieve Hilsenrath confidential records as tool for extortion.
2. 2007 Declaration of David Dahan re: Nixon meeting with trust executives to retrieve Hilsenrath records with objective to get Hilsenrath fired
3. 2000 Westreich, Mitchell (Appelbaum) and Glusband's itineraries of arrival to the London meeting re the extortion planning sessions on November 30 - December 5, 2000 at the Euston Park Plaza Hotel.

Sean Broderick's and David Dahan's sworn declarations in reference to a meeting in London between November 30 and December 5, 2000 in which WESTREICH AND MITCHELL retrieved personal and confidential Hilsenrath records with the objective to blackmailing Hilsenrath and removing him from his post as CEO. Here is an excerpt from Dahan's declaration [Attachment x]:

> "The abovementioned confidential Hilsenrath records were handed to the Nixon Peabody attorneys with the objective to impeach Hilsenrath with his holdings in offshore trusts and get CEO Hilsenrath fired. Hilsenrath was identified as the primary hurdle in the Janvrin litigation."[6]

---

[6] *Wynn v. NBC, 234 F. Supp. 2d 1067* The elements for a claim of tortious interference with contractual relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. //As an element of a tortious interference with contractual relations claim, plaintiffs must plead facts sufficient to support an inference that defendants intended to cause the alleged breach

HILSENRATH V. NIXON PEABODY LLP                -7-

### B. The harvesting of the extortion records and the commencement of the extortion scheme[7]

4. 2000, November 6 – Cover page of the first package of extortion documents for Westreich and Mitchell via Benzur[8] (17 pages of Hilsenrath records) – before the London Meeting
5. 2000 December transfer of a second package of 21 pages of Hilsenrath records to Nixon (Lillick) and Beth Mitchell (Appelbaum) with wishes of success to the extortion meting with the US Wireless attorneys (same meeting referred to in Rosenberg's letter – below)
6. 2000 Letter of Rosenberg from Benzur office to Westreich asking if Westreich has already commenced the extortion and asking what were the initial results

### C. Nixon, Westreich, Mitchell kickbacks in return for their malicious prosecution

7. 2001 Several kickback payments, each of $100,000, to Nixon Peabody (then Lillick and Charles) from Equity trust (then Insinger de Beaufort) in the 2001 timeframe contemporaneous with the firing of Hilsenrath from post as CEO. Dyke was not a client of Nixon Peabody's but a "hub" in Equity's control and identified as the recipient of the extortion money.

---

[7] It is important to note that the Hilsenrath family records had only "value" as a tool of extortion and had no link whatsoever with the legal proceedings7 in Janvrin v. Hilsenrath in its various incarnations (as enumerated before); see *O'Neil v. Cunningham, 118 Cal. App. 3d 466.*

[8] Mr. Benzur was used as a "hub" for the transmission of additional improper data with the primary objective of providing a cover for the conspiracy

D. **Rule 15 deposition of Nixon's co conspirator John Perkins in Jersey/UK (see also SPECIAL SECTION - below)**

8. 2005 excerpts of the court reporter's transcript of a two day deposition of John Perkins, executive of Janvrin and Equity trust as well as Nixon, Westreich and Mitchell's co-conspirator in the Hilsenrath extortion / malicious prosecution.

E. **Destruction of the extortion records by the conspirators[9]**

9. 2006 Letter of AUSA Laurel Beeler to DOJ/OIA requesting to find the extortion documentation at Equity trust - Nixon's co-conspirators.
10. 2007 Letter of Equity to the Jersey Attorney General stating that the extortion documents cannot be found at Equity anymore

F. **Second phase of malicious prosecution of Nixon against Hilsenrath and the disappearance of Nixon's co-conspirators**

11. 2002 Second amended complaint of Janvrin et al against Hilsenrath et al. In this second phase of their malicious prosecutions Nixon et al are claiming that they had no knowledge of an internal investigation of Hilsenrath by US

---

[9] *Leon v. IDX Sys. Corp.*, 464 F.3d 951 A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed. Moreover, because the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents
The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case. Prejudice can be found when a party's refusal to provide certain documents forces the other party to rely on incomplete and spotty evidence at trial.

---

*In re Holocaust Victim Assets Litig.*, 302 F. Supp. 2d 59 It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. An adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

wireless when entering into the extorted settlement. The internal investigation was none but the one they themselves instigated with the confidential records brought from London.

12. 2007 CMC statement of Westreich from Nixon Peabody announcing that his clients, Janvrin et al, all Equity trust entities are defunct since 2006.

13. 2007 Order of Judge Claudia Wilken dismissing the Janvrin case for failure of plaintiff (Janvrin) to prosecute and to comply with the order of the court (no-show). Westreich reported at the same hearing that Janvrin et al were defunct since a year earlier. The Court ordered to enter default as to the Hilsenrath counterclaim.

## G. SPECIAL SECTION FOR THE RULE 15 DEPOSITION OF NIXON'S CO-CONSPIRATOR JOHN PERKINS IN JERSEY/UK

A significant documented event in the investigation of the conspiracy between Janvrin et al (owned by Equity Trust) and Nixon Peabody - took place at the depositions held by the US government in July of 2005 in the setting of the court of her majesty the Queen in St. Helier, Jersey.

John Perkins, Nixon's main co-conspirator in the theft of the extortion-records stands a two days interview.

The interviewers were Ms. Laurel Beeler, for the US attorney in San Francisco, and Mr. Bob Breakstone, for Oliver Hilsenrath.

John Perkins was relaxed. He knew what everybody else was just guessing in July 2005: He knew that Equity Trust and Nixon

Peabody had carefully destroyed all records leading to their conspiracy to extort millions from Hilsenrath and US Wireless.

As the depositions were about documents supplied by Equity Trust (Janvrin's owner) themselves, Perkins had nothing to worry about: the traces of the conspiracy were lost forever in the shredder and in the past.

Unbeknownst to Perkins, fortunately, part of the records of the Janvrin-Nixon conspiracy were uncovered through other sources.

Those documents were in the hands of the interviewers - Ms. Beeler and Mr. Breakstone - both suspecting Perkins of a cover-up.

At the end of two full days of Q&A, when the tiring process was almost over, Breakstone asked him about the November 2000 meeting in London.

Perkins remembers. He was there, he remembers that Kalman was there, Westreich was there, and Benzur was there.

Perkins remembers the subject being how to obtain more stock from US Wireless - nothing else.

Breakstone asks Perkins "did you pass any personal information about the Hilsenrath's assets at that meeting?"

Perkins, knowing that they thoroughly cleaned house, lied with confidence: he does not recall passing Hilsenrath records.

Breakstone insists "did you pass any information about Hilsenrath himself at the meeting".

Perkins has no reason to suspect and lies again confidently: "that was not the subject of the meeting".
The package that Breakstone laid next in front of Perkins was about to end Perkins's relaxed demeanor.

There were the private records stolen by Janvrin and Nixon personnel from the Hilsenrath trust and transferred from Jersey to the San Francisco office of Nixon Peabody by express mail through a middleman: Amos Benzur from Israel.

The package, carefully shredded by the Janvrin/Nixon co-conspirators in their offices, was there - intact.

Including tens of pages of records of assets of the Hilsenraths.

Breakstone is patiently asking Perkins to review the package and read page-by-page its contents into the televised and transcribed record and to explain how those records ended up in Benzur's and Westreich's hands - attorneys for Janvrin.

Only when Perkins's voice grew faint asking: "Do you want me to keep going?" did Breakstone let him stop and asked him:

"What is going on here?"

Perkins incoherently explains: it was not him…, it was Kalman (his superior at Equity) and he had no idea that this was the

subject at the 5 days' meeting (at which he participated on his own recollection and at the recollection of 8 others).

Breakstone, unimpressed presses on and asks about Equity Trust's integrity and fiduciary duty to the Hilsenrath's.

At that point, Viscount Substitute Matthews - the Jersey presiding judiciary officer for the Queen - stood up and stopped the proceedings to prevent Perkins from incriminating his former employer Equity Trust (owners and operators of Janvrin) and Nixon Peabody's co-conspirators.

This was the end of the depositions in Jersey.

A few months later the US attorney in San Francisco, through diplomatic channels, sent an official letter to Ms. Rebecca Boxall of the Jersey Attorney General asking why Equity Trust (Janvrin owners) did not produce certain documents, pertinent to that inquiry.

After numerous letters from the US to the Jersey authorities, back and forth, and almost two years later, in April 2007 - Equity trust ultimately admitted with resignation: we could not locate those documents in our files. [Correspondence included in Oliver Hilsenrath Declaration]

## LEGAL ARGUMENT

No requirement to file for leave pursuant to § 1714.10

§ 1714.10 (a) states: *"No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is*

*based upon the attorney's representation of the client"* - Nixon Peabody, Westreich and Mitchell resigned from representation of Janvrin et al and the case Janvrin v. Hilsenrath was dismissed, therefore there can be no attempt to compromise a dispute.

Reasonable probability that Plaintiff will prevail in the action

There are several arguments in support of plaintiffs' reasonable probability to succeed:

First, the sudden disappearance of Nixon's client once the fact of the extortion surfaced, after an aggressive and malicious 7 years long pursuit of the Hilsenraths.

Second, the finding of the court in *Janvrin v. Hilsenrath* in favor of the Hilsenraths.

And third, the fact that Janvrin, who were found to have been involved in a conspiracy to extort, operated solely through their attorneys, Nixon Peabody, Westreich and Mitchell.

It is unreasonable to assume that these attorneys acted with such boldness for 7 years without understanding what they were doing. Even if they did so, they added and abetted a crime.

§ 1714.10 (c) - further exceptions to the need to obtain leave - malicious prosecution

§ 1714.10 (c) stipulates additional exceptions for the need to file for leave if:

**(1) the attorney has an independent legal duty to the plaintiff[10]**

Mr. Hilsenrath and the Hilsenraths had the basic right to be treated fairly according to their constitutional rights and to be prosecuted fairly.

The entrapment, conspiracy to extort and ultimately to prosecute the Hilsenraths pursuant to made-up, false premises, have violated Nixon Peabody's obligation of a fair litigation towards plaintiffs.

**(2) the attorney's acts go beyond the performance of a professional duty --**

**i.   -- to serve the client[11] and**

To assist a client in the implementation of an unlawful scheme to blackmail cannot be counted as a "professional duty to serve a client".
More so, in the present case Nixon, Westreich and Mitchell were partners and participate knowingly in the scheme (see Exhibit 11)

**ii.   -- involve a conspiracy to violate a legal duty**

Nixon et al violated their duty to a fair and lawful prosecution.

---

[10] Every tort involves the violation of some legal duty, whether imposed by statute, contract or common law, owed by the defendant to the person injured. (*Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4th 1556, 1564; *Krongos v. Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 392-395.)

[11] *DUNIVAN v. McCURDY*, 2002 Cal. App. Unpub. In sum, the "independent duty" exception of section 1714.10, subdivision (c) may arise from the allegation that the alleged attorney conspirator committed a tort independently of his or her client. Respondents' third cause of action for civil conspiracy was based on the allegation that, independently of their client, appellants had engaged in the tort of malicious prosecution against respondents. The allegations of the proposed complaint were therefore sufficient to state a viable cause of action for civil conspiracy. On this basis, we conclude the trial court correctly determined that respondents' third cause of action for civil conspiracy came within the exclusion provision of section 1714.10, subdivision (c), and was not subject to the prefiling requirements of section 1714.10, subdivision (a).

More so, Nixon et al violated their duty as officers of the court and their basic professional duty to ethics by utilizing the federal legal system and the court itself as the stage and the cover-up for a conspiracy to blackmail.

### iii. -- in furtherance of the attorney's financial gain[12]

Nixon Peabody received significant funds as kickbacks from their extortion scheme as presented in Exhibit 7. This compensation was beyond legal fees as Dyke (the paying entity) was never a client of Nixon et al, but rather the recipient of alleged extortion money.

## Malicious Prosecution

The single most debated and agreed topic for waiver of the prefiling requirement is malicious prosecution[13], as both an

---

[12] *CERTIFIED FOR PUBLICATION 7/29/05 IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA SIXTH APPELLATE DISTRICT: BERG & BERG ENTERPRISES, LLC, Plaintiff and Respondent, v. SHERWOOD PARTNERS, INC., et al. Defendants and Appellants. H026821 (Santa Clara County Super. Ct. No. CV813942*
We hold that counsel for the assignee owes no such independent duty to these third parties as a matter of law. We further hold that the exception to the application of section 1714.10 provided in subdivision (c)(2) thereof, which allows the filing of an action for conspiracy without prefiling approval where "the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain," means that the economic benefit derived by the attorney is over and above monetary compensation received in exchange for professional fees earned for the representation of his or her client.
We accordingly reverse the trial court's order that allowed Berg's amended complaint alleging attorney-client conspiracy-based claims against Sulmeyer and Sherwood.

[13] Flores v. Emerich & Fike, 2006 U.S. Dist. LEXIS 63251
The elements of a prima facie case of malicious prosecution are (1) a judicial proceeding favorably terminated; (2) lack of probable cause; and (3) malice. Malicious prosecution actions are disfavored under California law. The tort of malicious prosecution has historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution action. This is an evidentiary burden, not a pleading requirement. The court must consider the pleadings and the evidence submitted by the parties; it cannot weigh the evidence but instead must simply determine whether the plaintiff's evidence would, if credited, be sufficient to meet its burden of proof.

implicit duty of the attorney to the plaintiff §1714.10 (1) as well as a violation of legal duty §1714.10 (2), c[14].

## CONCLUSION

Plaintiffs Hana and Oliver Hilsenrath submit that this current complaint warrants a waiver of the duty to prefile pursuant to §1714.10 (c).

Nevertheless, plaintiffs are presenting comprehensive evidence of a reasonable probability to prevail in this current action pursuant to §1714.10 (a).

For the above reasons, plaintiffs respectfully move the Court to allow the attached pleading: COMPLAINT FOR MALICIOUS PROSECUTION, CIVIL CONSPIRACY AND EXTORTION.

Dated: June 18, 2007

Respectfully submitted,

HANA HILSENRATH                         OLIVER HILSENRATH

---

[14] DUNIVAN v. McCURDY, 2002 Cal. App. Unpub.
  In the case of the tort of malicious prosecution, the fundamental interest protected is that of every person to be free from unjustifiable and unreasonable litigation initiated without probable cause, and the corresponding duty is to refrain from initiating such unjustified litigation. (Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 881-882, 254 Cal. Rptr. 336, 765 P.2d 498.)